UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES SMITH,

                                    Petitioner,                    11 Civ. 47 (VB)(PED)

            - against -                                           **REPORT AND
                                                                  RECOMMENDATION**

EKPE D. EKPE, Superintendent,

                                    Respondent.

TO:   THE HONORABLE VINCENT L. BRICCETTI,
      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Charles Smith ("Petitioner"), proceeding *pro se*, seeks a writ of *habeas corpus* pursuant

to 28 U.S.C. § 2254.  Petitioner pled guilty on April 30, 2004, in Westchester County Court

(Walker, J.) to one count of robbery in the third degree and one count of criminal sale of a

controlled substance in the fifth degree.  He was sentenced to consecutive terms of three and one-

half to seven years imprisonment on each count, for a total aggregate sentence of seven to

fourteen years imprisonment.  The instant *habeas* petition challenges only the robbery

conviction.

The matter comes before me pursuant to an Order of Reference dated September 23,

2011.  (Dkt. 14.)  For the reasons set forth below, I respectfully recommend that the petition be

**DENIED**.

## II. BACKGROUND[1]

---

[1] Unless otherwise indicated, the information within this section is taken from a review of
the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254 ("Pet."), (Dkt. 1);
Petitioner's Affirmation in Support of Petition for Writ of Habeas Corpus ("Pet'r's Affirm."),
(Dkt. 13); Respondent's Memorandum of Law and Respondent's Exhibits ("Resp't's Mem."),

**A.**     <u>The Crimes</u>

On December 9, 2003, police officers observed Petitioner sell crack cocaine to an

unknown male in Mount Vernon, New York.  Petitioner was arrested and released on bail.  On

December 13, 2003, Petitioner entered a gas station in Mount Vernon, New York and, carrying a

handgun, forcibly robbed the gas station attendant of $868.

**B.**     <u>The Indictments</u>

Two indictments were filed charging Petitioner with the following offenses: one count of

criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal Law §

220.39;[2] one count of criminal sale of a controlled substance in or near school grounds, in

violation of N.Y. Penal Law § 220.44;[3] one count of criminal possession of a controlled

substance in the third degree, in violation of N.Y. Penal Law § 220.16;[4] one count of criminal

---

(Dkt. 11); and Respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus
(Resp't's Aff."), (Dkt. 11).  All exhibits cited herein are attached to Respondent's Memorandum
(Dkt. 11).  I identify those exhibits as they appear in the hard copies sent to Chambers, and not
as they have been electronically docketed.

[2] "A person is guilty of criminal sale of a controlled substance in the third degree when
he knowingly and unlawfully sells . . . a narcotic drug."  N.Y. Penal Law § 220.39(1).

[3]
> A person is guilty of criminal sale of a controlled substance in or near school
> grounds when he knowingly and unlawfully sells . . . a controlled substance in
> violation of any one of subdivisions one through eight of section 220.39 of this
> article, when such sale takes place upon school grounds; or . . . upon the grounds of
> a child day care or educational facility under circumstances evincing knowledge by
> the defendant that such sale is taking place upon such grounds . . . .

N.Y. Penal Law § 220.44(2), (4), <u>amended by</u> 2006 N.Y. Sess. Law ch. 436, § 4 (2006).

[4] "A person is guilty of criminal possession of a controlled substance in the third degree
when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it."  N.Y.
Penal Law § 220.16(1).

possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law §
220.03;[5] one count of robbery in the second degree, in violation of N.Y. Penal Law § 160.10;[6]
one count of criminal possession of a weapon in the second degree, in violation of N.Y. Penal
Law § 265.08;[7] and one count of grand larceny in the fourth degree, in violation of N.Y. Penal
Law § 155.30.[8]

## C.   The Guilty Pleas

On April 30, 2004, pursuant to a plea bargain, Petitioner pled guilty to one count of
robbery in the third degree, in violation of N.Y. Penal Law § 160.05,[9] and one count of criminal

---

[5] "A person is guilty of criminal possession of a controlled substance in the seventh
degree when he knowingly and unlawfully possesses a controlled substance." N.Y. Penal Law §
220.03, amended by 2010 N.Y. Sess. Law ch. 284, § 1 (2010).

[6]
A person is guilty of robbery in the second degree when he forcibly steals property
and when . . . [i]n the course of the commission of the crime or of immediate flight
therefrom, he or another participant in the crime . . . [d]isplays what appears to be
a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 160.10(2)(b).

[7]
A person is guilty of criminal use of a firearm in the second degree when he commits any class C
violent felony offense as defined in paragraph (b) of subdivision one of section 70.02 and he
either . . . possesses a deadly weapon . . . or . . . displays what appears to be a pistol, revolver,
rifle, shotgun, machine gun or other firearm.

N.Y. Penal Law § 265.08.

[8] "A person is guilty of grand larceny in the fourth degree when he steals property and
when . . . the property, regardless of its nature and value, is taken from the person of another."
N.Y. Penal Law § 155.30(5).

[9] "A person is guilty of robbery in the third degree when he forcibly steals property."
N.Y. Penal Law § 160.05.

sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.31,[10] in full satisfaction of the indictments and certain other unrelated, pending charges.[11]  The terms of the plea agreement included concurrent, indeterminate terms of two to four years imprisonment on each count; a six month driver's license suspension; and a $420 total surcharge.  The court informed Petitioner that it would release him on his own recognizance prior to sentencing, but that if Petitioner was arrested or violated any condition of bail – including by failing to appear for his probation pre-sentence interview – the court would not be bound to impose the negotiated sentence.  In that case, the court informed Petitioner that it would sentence Petitioner, as a second felony offender, to consecutive sentences of three and one half to seven years imprisonment on each count.[12]  Petitioner stated that he understood the terms of the plea bargain and the rights that he waived by pleading guilty; that he was satisfied with his attorney's representation; and that his plea was made voluntarily and without coercion.  Petitioner also admitted to committing the crimes.  The matter was then adjourned to July 14, 2004 for sentencing.  (See Apr. 30, 2004 Tr., at 10-27 (Ex. 2).)

**D.**   **Violations of the Conditions of Bail and Requests for New Counsel**

Petitioner failed to report for his pre-sentence interview with probation and a bench warrant was issued for his arrest.  On July 14, 2004, Petitioner appeared for sentencing.  The

---

[10] "A person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance."  N.Y. Penal Law § 220.31.

[11] Petitioner was charged with resisting arrest and criminal possession of a weapon in the third degree for events unrelated to the robbery and narcotics sale described above.  (See Aug. 12, 2005 Decision & Order, at 1 (Ex. 13)); see also N.Y. Penal Law §§ 205.30, 265.02.

[12] Petitioner was convicted in 1997 of criminal sale of a controlled substance in the third degree.  (See Apr. 30, 2004 Tr., at 22 (Ex. 2).)

4

court withdrew the warrant and adjourned sentencing until September 29, 2004 to provide

Petitioner a further opportunity to report to probation.  (See generally July 14, 2004 Tr. (Ex. 3).)

Petitioner failed to appear for sentencing and another bench warrant was issued for his

arrest on September 29, 2004.  (See generally Sept. 28, 2004 Tr. (Ex. 4).[13])  Petitioner was

arrested later in Florida and presented in Westchester County Court on April 1, 2005.[14]  He still

had not reported to probation during this period.[15]  He was remanded and the court adjourned the

matter to April 6, 2005.  (See generally Apr. 1, 2005 Tr. (Ex. 5).)

On April 6, 2005, Petitioner appeared with counsel who requested leave to move to

withdraw his guilty pleas.  Petitioner then stated he wanted to fire his attorney.  The court stated

that all motions must be made in written form, and adjourned the matter to May 18, 2005 for

sentencing.  (See generally Apr. 6, 2005 Tr. (Ex. 6).)

On May 18, 2005, Petitioner appeared with counsel, who moved to be relieved on the

basis of a conflict of interest.  The court granted the attorney's application and assigned

Petitioner new counsel.  The court then adjourned the matter to June 1, 2005.  (See generally

May 18, 2005 Tr. (Ex. 7).)

---

[13] The transcript of this proceeding reflects a date of September 28, 2004.  I presume this to be a transcription error.

[14] By separate indictment, Petitioner was convicted, upon plea of guilty, of two counts of bail jumping in the second degree.  He was sentenced to concurrent, indeterminate terms of one and one-half to three years imprisonment, to run concurrent with the sentences imposed for the robbery and narcotics sale.  (See Resp't's Aff., at 6 n.4.)

[15] Petitioner was subsequently charged with two counts of bail jumping in the second degree, in violation of N.Y. Penal Law § 215.56.  Petitioner pled guilty to both counts in Westchester County Court.  He was sentenced to concurrent indeterminate terms of one and one half years to three years imprisonment.  These sentences were to run concurrent with the sentences imposed in the instant action.

5

On June 1, 2005, Petitioner appeared with new counsel and was arraigned as a predicate felony offender. Counsel then argued that the court should sentence Petitioner in accordance with the original plea bargain, despite Petitioner's failure to cooperate with probation and his flight from the state. Petitioner then asked the court for an adjournment so that he could prepare a written motion to withdraw his earlier guilty pleas. Counsel informed the court that he reviewed the record and could not find a legal basis for making such a motion. Petitioner then sought leave to file the motion *pro se*. The court granted Petitioner leave and adjourned the matter to June 15, 2005. (See generally June 1, 2005 Tr. (Exs. 9, 10).[16])

## E.  Motion to Withdraw Guilty Plea

Petitioner, proceeding *pro se*, then moved, pursuant to N.Y. Crim. Proc. Law § 220.60, to withdraw his guilty pleas.[17] He argued that the pleas should be withdrawn because he "was put under unreasonable pressure to plead guilty by his Attorneys," and stated that "at no time did [he] express any willingness or desire to plead guilty," that he "repeatedly made his feelings on this matter clear to counsel," and that counsel "repeatedly threaten[ed] defendant that she would not defend him if he did not Accept the Offer." (Aff. in Supp. of Mot. to Withdraw Plea of Guilty, at 1-2 (Ex. 10).) Petitioner also argued, *inter alia*, that he "was unaware of the consequences of

---

[16] When the court asked Petitioner what he wanted to achieve by withdrawing his guilty plea, Petitioner stated "I don't want to do 7 to 14. I don't want to do a bunch of time." (June 1, 2005 Tr., at 9 (Exs. 9, 10).) Petitioner then stated that he informed the court at the time of his guilty plea that he was "innocent." (Id. at 10.)

The June 1, 2005 transcript is attached twice to Respondent's Memorandum on the docket as both Exhibit 9 and Exhibit 10.

[17] "At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment . . . and in such event the entire indictment, as it existed at the time of such plea, is restored." N.Y. Crim. Proc. Law § 220.60(3).

entering into a statutorily improper plea and was not told by [his] attorney," that his "attention

Deficit Disorder . . . greatly impairs" him, and that he was mentally ill during the week that he

pled guilty. (Id. at 5-6.) He further argued that he could not have been threatened with, or

sentenced as, a second felony offender because he was adjudicated as a Youthful Offender for a

1988 conviction.[18]  (See id. at 6.)

By Decision and Order dated August 12, 2005, the court denied Petitioner's motion.

(See Aug. 12, 2005 Decision & Order.)

**F.**     **Sentencing**

On August 15, 2005, Petitioner was sentenced, *inter alia*, to consecutive, indeterminate

terms of three and one-half years to seven years imprisonment.  (See generally Aug. 15, 2005 Tr.)

**G.**     **Direct Appeal**

Notices of Petitioner's appeal were filed in 2005.  On November 9, 2005, the Appellate

Division, Second Department granted his request to prosecute his appeal *in forma pauperis*.

New appellate counsel was also assigned.  (See Affirm. in Response, at 4 (Ex. 17).)  By letter

dated November 29, 2006, Petitioner, proceeding *pro se*, again requested assignment of new

appellate counsel.  (See Ex. 15.)  On January 23, 2007, the motion was denied without prejudice

to a later application by Petitioner to file a supplemental *pro se* brief.  (See Ex. 18.)  Petitioner

did not file a supplemental brief.

Through appellate counsel, Petitioner appealed his conviction to the Second Department

and raised the following claims:

---

[18] Petitioner raised this issue again at sentencing.  The prosecutor represented that
Petitioner had been convicted in 1988 for attempted murder and was sentenced as a juvenile
offender.  (See Aug. 15, 2005 Tr., at 16 (Ex. 14).)

7

> (1)    Petitioner was denied his constitutional right to counsel when his attorney refused to move to withdraw his guilty plea; and
>
> (2)    the guilty plea to robbery in the third degree violated N.Y. Crim. Proc. Law § 220.10(5)(d)(ii).[19]

(See Br. for Def.-Appellant (Ex. 26).)

The Second Department affirmed the conviction on April 28, 2009. People v. Smith, 876 N.Y.S.2d 900 (App. Div. 2009). Leave to appeal to the New York State Court of Appeals was denied on November 4, 2009.[20] People v. Smith, 13 N.Y.3d 862 (2009). Application for reconsideration was denied on January 29, 2010. People v. Smith, 13 N.Y.3d 942 (2010). Petitioner did not seek *certiorari* to the United States Supreme Court.

## H.    Motion to Vacate Judgment of Conviction

Petitioner, proceeding *pro se*, moved the trial court to vacate the judgment of his conviction on October 7, 2007 pursuant to N.Y. Crim. Proc. Law § 440.10.[21] Petitioner argued, *inter alia*, that his guilty plea to robbery in the third degree violated N.Y. Crim. Proc. Law § 220.10(5)(d)(ii). (See Ex. 19). By decision dated December 28, 2007, the court denied the motion. (See Ex. 22.) Leave to appeal to the Second Department was denied on March 27, 2008. (See Ex. 25.)

---

[19] "[W]here the indictment charges a class B violent felony offense or a class C violent felony offense, then a plea of guilty must include at least a plea of guilty to a class D violent felony offense." N.Y. Crim. Proc. Law § 220.10(5)(d)(ii).

[20] The Court of Appeals initially dismissed Petitioner's letter application seeking leave to appeal on August 18, 2009 as untimely. People v. Smith, 13 N.Y.3d 749 (2009). It then granted Petitioner's request for an extension of time to seek such leave on September 17, 2009. People v. Smith, 13 N.Y.3d 783 (2009).

[21] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ." N.Y. Crim. Proc. Law § 440.10(1).

## I.     Federal *Habeas Corpus* Proceedings

On December 9, 2010, Petitioner, proceeding *pro se*, filed a petition seeking a federal

writ of *habeas corpus* in the Southern District of New York.[22]  (Dkt. 1.)  He raises the following

three claims:

> (1)     Petitioner's Fifth Amendment "right not to [*sic*] held to answer for a . . .
> crime, unless on indictment" was violated when the trial court accepted his
> guilty plea.  (Pet., at 5.)  Petitioner contends that, because he was indicted on
> second-degree robbery, he could not have pled guilty to third-degree robbery
> pursuant to N.Y. Crim. Proc. Law § 220.10 because third-degree robbery is
> not a lesser included offense of the indicted offense.  (See id.)
>
> (2)     Petitioner's Fourteenth Amendment rights to due process and equal
> protection of the laws were violated when the trial court denied his motion
> to withdraw his guilty plea.  Petitioner also contends that, because his guilty
> plea was an unlawful plea pursuant to N.Y. Crim. Proc. Law § 220.10, it
> could have been withdrawn by the court or the prosecutor at any time,
> therefore rendering the plea an "illusory promise."  (See id. at 5-6.)
>
> (3)     Petitioner's Sixth Amendment rights were violated due to the ineffective
> assistance of his counsel for refusing to file a motion to withdraw the guilty
> plea.  (See id. at 6.)

## III.  DISCUSSION

### A.     Applicable Law on *Habeas Corpus* Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claims in

accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas*

---

[22] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13.1.

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

**1.** ***Timeliness Requirement***

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitations period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (quoting Smith, 208 F.3d at 17) (emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2.   *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. See Rose v. Lundy, 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

11

appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005). A claim may be "fairly presented" to the state courts, therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "'[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (quoting Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey, 933 F.2d

at 120.  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain

unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise

its discretion to review and deny a mixed petition containing both exhausted and unexhausted

claims, if those unexhausted claims are "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277

(2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004)

(interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.    *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism

demand that a federal court abstain from its review when the last-reasoned state court opinion to

address the claim relied upon "an adequate and independent finding of a procedural default" to

deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst

v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126

(2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on

state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Coleman, 501 U.S. at

740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the

state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia,

498 U.S. 411, 423–24 (1991)).

4.      *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims.  § 2254(d)(1)–(2).  This statute "modifie[d] the role of federal habeas courts

in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.

Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became

effective, federal courts must apply the following standard to cases in which the state court

adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).  The deferential AEDPA standard of review will be triggered when the state

court has both adjudicated the federal claim "on the merits," and reduced its disposition to

judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not

reach the merits" of the federal claim, however, "federal habeas review is not subject to the

deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed *de novo*."

Cone v. Bell, 556 U.S. 449, 472 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is

contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme

Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413.  A decision

involves an "unreasonable application" of Supreme Court precedent if the state court "identifies

the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to

the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal

principle from [Supreme Court] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to

be correct.  § 2254(e)(1); <u>see</u> <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir. 1997).  The

petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.**     **Analysis of Petitioner's Claims**

    **1.**     ***Fifth Amendment and Fourteenth Amendment Claims (Claims 1 and 2)***

The first claim raised in Petitioner's *habeas* petition contends that his Fifth Amendment

"right not to [*sic*] held to answer for a . . . crime, unless on indictment" was violated by the trial

court's acceptance of his guilty plea.  (Pet., at 5).  Specifically, Petitioner argues that the offense

he pled guilty to – third-degree robbery – is not a lesser included offense of the offense that he

was indicted for – second-degree robbery – because third-degree robbery does not "possess[ ] the

intent to injure which is gravamen of the former."  (<u>Id.</u>)  Petitioner also asserts that his guilty

plea violated N.Y. Crim. Proc. Law § 220.10 for this reason.  (<u>See id.</u>)

The second claim raised in the Petition contends that Petitioner's Fourteenth Amendment

rights to due process and equal protection were violated when the state court denied his motion

to withdraw his guilty plea.  Petitioner also asserts within this claim that, because his guilty plea

violated N.Y. Crim. Proc. Law § 220.10, it could have been withdrawn by the court or the

prosecutor at any time.  Accordingly, Petitioner contends that this rendered his guilty plea an

"illusory promise." (See id. at 5-6.)

Respondent contends that each claim remains unexhausted and is otherwise without merit. (See generally Resp't's Mem.)   I agree with Respondent and find that the claims are unexhausted.

To the extent Petitioner's second claim contains allegations that his plea was an "illusory promise,"[23] (see Pet., at 6), that argument remain unexhausted because it was not previously raised in state court.[24]   Indeed, Petitioner concedes that this claim "was not presented in any other court in whole" and that he "did not claim in any court until now that the promise was illusory." (Id. at 6.)   Such an unexhausted, record-based claim, however, may be "deemed exhausted" because Petitioner may no longer raise it in a state collateral proceeding. See N.Y. Crim. Proc. Law § 440.10(2)(c) (claims adequately based in the record but not argued on direct appeal must be denied when raised in a post-conviction motion); Reyes, 118 F.3d at 139.  This Court may circumvent Petitioner's procedural default and review the claim only upon a showing of cause and prejudice or a fundamental miscarriage of justice. See Schlup, 513 U.S. at 298; Harris, 489

---

[23] Petitioner defines "illusory promise" in his petition as follows: "An apparent promise which according to its term, makes performance optional with the promisor no matter what may happen . . . is infect [sic] no promise at all." (Pet., at 6.)

[24] Petitioner mentions an "illusory promise" argument in his Affidavit in Response to Petitioner's opposition to his § 440.10 motion. (See Ex. 21, at 4 (unpaginated).) However, "[i]t is clear that a claim raised for the first time within the context of a reply brief does not, under New York law, fairly present that claim." Goldstein v. Hulihan, No. 09 Civ. 6824, 2011 WL 4954043, at *7 (S.D.N.Y. Feb. 28, 2011) (Report & Recommendation), adopted by, 2011 WL 4954038 (S.D.N.Y. Oct. 18, 2011); see also Rustici v. Phillips, 308 F. App'x 467, 469 (2d Cir. 2009) (citing Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000)) ("'Under New York law . . . a claim of error first raised in a reply brief is not properly presented to the reviewing court.'").
 Copies of unreported cases cited herein will be mailed to Petitioner.   See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

16

U.S. at 262 (1989).  Because Petitioner does not assert either, the claim must be denied.[25]

It is also clear that Petitioner's Fifth and Fourteenth Amendment arguments were never fairly presented in any prior state court proceeding.  First, Petitioner's appellant brief did not cite federal cases in support of his Fifth Amendment claim, or in support of a Fourteenth Amendment due process or equal protection claim regarding the right to withdraw a guilty plea.  See Daye, 696 F.2d at 194; (Br. of Def.-Appellant, at 18-21).[26]  (See Br. of Def.-Appellant, at 18-21.)  Second, Petitioner's brief did not rely "on state cases employing constitutional analysis in like fact situations."  Daye, 696 F.2d at 194.  The various state cases that Petitioner cited in his brief discuss only issues of state procedure and state law, and do not contain federal constitutional analysis of the Fifth or Fourteenth Amendments.  (See Br. of Def.-Appellant, at

---

[25] While Petitioner does allege that he is innocent, (see Pet'r's Affirm. ¶¶ 81, ), his claim does not amount to "actual innocence" for purposes of the *habeas corpus* miscarriage of justice gateway.  A petitioner may circumvent a procedural default if he can "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Schlup, 513 U.S. at 327 (quoting Murray, 477 U.S. at 496).  Yet "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*."  Id. (emphasis added); see also Bousley, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency"); Rivas v. Fischer, 687 F.3d 514, 543 (2d Cir. 2012) (under Schlup, new evidence must be "evidence not heard by the jury").  Here, Petitioner has not pointed to specific, new evidence that would permit this Court to characterize his case as "extraordinary" and therefore entitled to the "extremely rare" miscarriage of justice exception.  Schlup, 513 U.S. at 321-22; see also, e.g., Brown v. Lee, No. 10 Civ. 7605, 2011 WL 3837123, at *14 (S.D.N.Y. Aug. 30, 2011) ("Petitioner fails to allege any facts in support of his claim of [actual] innocence beyond merely stating it.  This is insufficient to support [the] claim.").

[26] The only arguable reference to the Fifth Amendment can be found in the "Reply Brief for Defendant-Appellant."  (See Ex. 28.)  Petitioner therein stated that his guilty plea was defective because there was "no true negotiated bargain," and that, "[t]herefore, the defendant's argument is more in the nature of a due process constitutional right."  (Id. at 3.)  Even if this statement was sufficient to raise a Fifth Amendment claim, see Rustici, 308 F. App'x at 469; Goldstein, 2011 WL 4954043, at *7, the claim remains unexhausted because Petitioner failed to raise the claim in Fifth Amendment terms in his letter applications for leave to appeal to the New York Court of Appeals.  (See Exs. 29, 33.)

18-21.)  Petitioner cannot rely on such citations to exhaust his claims.  Cf., e.g., Marshall v.

McLaughlin, No. 04 Civ. 10154, 2007 WL 2438380, at *5 (S.D.N.Y. Aug. 27, 2007) (where

argument referenced New York cases employing relevant federal constitutional analysis, claim

was fairly presented for purposes of *habeas* review).  Further, the component of the Fifth

Amendment that Petitioner invokes provides a criminal defendant the right to indictment by

grand jury, U.S. Const. amend V, and ensures that, "after an indictment has been returned its

charges may not be broadened through amendment except by the grand jury itself," Stirone v.

United States, 361 U.S. 212, 215-16 (1960); (see Pet'r's Affirm. ¶¶ 58-69).  Yet this Fifth

Amendment right has never been incorporated against the states through the Fourteenth

Amendment.  Hurtado v. California, 110 U.S. 516 (1884); see LanFranco v. Murray, 313 F.3d

112, 118 (2d Cir. 2002).  Accordingly, I do not find that Petitioner's state court argument alleged

a "mainstream" "pattern of facts," or described "in terms so particular as to call to mind" this

federal right.  Daye, 696 F.2d at 194; see also Picard v. Connor, 404 U.S. 270, 278 (1971) ("The

claim that an indictment is invalid is not the substantial equivalent of a claim that results in an

unconstitutional discrimination.").

     Likewise, Petitioner's argument involving the state court's denial of his motion to

withdraw his guilty plea was premised upon his attorney's failure to support that motion (which

is addressed separately below as Petitioner's Sixth Amendment claim), and the invalidity of the

plea pursuant to N.Y. Crim. Proc. Law § 220.10.  The argument was simply not described in

terms so particular as to have called to mind federal constitutional principles regarding equal

protection or due process.  See also, e.g., Anderson v. Harless, 459 U.S. 4, 7 (1982) (per curiam)

(general or vague reference to federal right, where argument cites only state law cases not

containing relevant federal constitutional analysis does not fairly present federal claim); Grady v.

LeFevre, 846 F.2d 862, 865 (2d Cir. 1988) (where appellant brief cited only New York caselaw and analysis "discuss[ed] the issue solely in terms of New York law," federal constitutional claim was not fairly presented to state courts); Petrucelli, 735 F.2d at 688 ("[A] mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim.  'Due process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law."); Daye, 696 F.2d at 193 ("The more specific the description of the right in question – e.g., assistance of counsel, double jeopardy, self-incrimination – the more easily alerted a court will be to consider a constitutional constraint couched in similarly specific terms. . . . The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a 'fair trial.' . . . Obviously not every event in a criminal proceeding that might be described as 'unfair' would be a violation of the defendant's rights under the Constitution."); id. at 193 n.6 ("a defendant's reference in constitutional terms to the deprivation of one particular right does not serve to alert a court to a contention that another constitutional violation also occurred"); Scullark v. Greiner, 2005 WL 3454730, at *2 (S.D.N.Y. Dec. 15, 2005) ("mere references to 'due process' and 'fair trial' are insufficient if the argument rests on issues of state law"); Spencer v. McCray, 2004 WL 1110244, at *7 (S.D.N.Y. Apr. 30, 2004) (citing Petrucelli, 735 F.2d at 684, 688-90)) (claim was not fairly presented where petitioner, "[i]n his direct appeal, . . . alleged that the Justice's instructions violated his 'due process right to a fair trial,' but relied exclusively on state law cases which made no reference to the United States Constitution"); c.f., e.g., Powell v. Greiner, 2003 WL 359466, at *2 (S.D.N.Y. Feb. 18, 2003) (internal quotation marks omitted) (fair trial claim based on trial court's evidentiary ruling was fairly presented where petitioner stated his "due process right to a fair

trial" was violated and cited the Fourteenth Amendment); <u>Davis v. Hodges</u>, 2002 WL 1033711,

at *6 (S.D.N.Y. Jan. 9, 2002) (asserting the phrase "right to confront witnesses" is "sufficient to

have called to mind [the] specific right protected by the Constitution"); <u>Perez v. McGinnis</u>, 1999

WL 1021818, at *5 (E.D.N.Y. Jan. 4, 1999) ("a claim of improper curtailment of cross-

examination of an adverse witness directly calls to mind a defendant's Sixth Amendment right of

confrontation" and therefore sufficiently presents a state court with that federal claim).

Accordingly, the state courts were not put on notice that they were to decide a federal Fifth or

Fourteenth Amendment claim through the arguments Petitioner raised on direct appeal.

Likewise, there was no mention of the Fifth Amendment in Petitioner's § 440.10 motion,

and his citations to the New York Constitution and to New York cases that did not employ

federal Fifth Amendment analysis, as well as his passing reference to the Fourteenth

Amendment and the Supremacy Clause of the U.S. Constitution, are insufficient to fairly present

and exhaust these federal constitutional claims.  (<u>See generally</u> Ex. 19.)

Petitioner's unexhausted claims may nonetheless be "deemed exhausted" if it is clear that

any attempt to exhaust them now would prove to be futile.  <u>Reyes</u>, 118 F.3d at 139.  Here,

Petitioner's failure to properly raise the claims on direct appeal precludes collateral review under

New York law.  <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner has not alleged cause and

prejudice or a fundamental miscarriage of justice that would permit this Court to circumvent his

procedural default and review the merits of the claims.  <u>See</u> <u>Schlup</u>, 513 U.S. at 298; <u>Harris</u>, 489

U.S. at 262 (1989).

Finally, to the extent Petitioner argues that *habeas* relief is warranted because of a

violation of N.Y. Crim. Proc. Law § 220.10, such a claim must be denied.  Issues involving

compliance with state procedural laws do not raise federal questions necessary for *habeas* review. Zagarino v. West, 422 F. Supp. 812, 814 n.1 (E.D.N.Y. 1976) (citing Rose v. Hodges, 423 U.S. 19, 21 (1975)); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Accordingly, the claims must be denied.

## 2.    *Sixth Amendment Claim (Claim 3)*

Petitioner asserts that he was denied his right to the effective assistance of counsel. Specifically, he argues that his attorney refused to file a motion to withdraw his guilty plea. Petitioner also argues that, had his "attorney acted in [Petitioner's] best interest he would have presented better case law and would have added to [Petitioner's] claim that [his] plea was entered in violation of statute." (Pet., at 6.) Respondent argues that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address this claim.[27] See Ylst, 501 U.S. at 803. It is clear

---

[27] Specifically, the Second Department held:

> Contrary to the defendant's contention, the County Court properly denied his request for the assignment of new counsel on his application to withdraw his pleas of guilty. The defendant suffered no discernible prejudice based upon his counsel's failure to amplify his pro se contentions, and defense counsel was not obligated to participate in a baseless *pro se* motion to withdraw a plea of guilty which was voluntarily, knowingly, and intelligently made. Moreover, there is no merit to the defendant's contention that he was denied the effective assistance of counsel.

that the court denied this claim on the merits.  See Smith, 876 N.Y.S.2d at 900.  Accordingly, I

address this claim pursuant to AEDPA's deferential standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides

that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense."  U.S. Const. amend. VI.  The Supreme Court has construed this clause to afford

criminal defendants the right to the *effective* assistance of counsel.  See McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970).  A petitioner's ineffective assistance of counsel claim will

succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an

objective standard of reasonableness," as measured under "prevailing professional norms,"

Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different," id. at 694.

A *habeas* petitioner bears the burden of proving both prongs of the Strickland test.  He

must therefore prove that his attorney's actions were objectively unreasonable as well as that he

was prejudiced to the extent that there exists a reasonable probability that the result of the

proceeding would have been different.  Id. at 689, 693.  To show that an attorney's conduct was

unreasonable, the petitioner must overcome "a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance."  Id. at 689.  Additionally, a "fair

assessment of attorney performance requires that every effort be made to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time."  Id.  Because a petitioner may

_____

Smith, 876 N.Y.S.2d at 901 (internal quotation marks and citations omitted).

succeed only by proving both Strickland prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Here, even if counsel's failure to move to withdraw Petitioner's guilty plea is deemed deficient conduct, Petitioner cannot establish the second prong of Strickland and show that, had his attorney done so, the motion would have been granted.  Petitioner filed a *pro se* motion to withdraw his plea, and the trial court entertained the motion and denied it on the merits.[28]  (See Exs. 10, 13.)  Under New York law, "'[t]he decision to permit withdrawal of a guilty plea is a matter within the trial court's sound discretion.'"  People v. Shovah, 889 N.Y.S.2d 717, 718 (App. Div. 2009) (quoting People v. De Fabritis, 745 N.Y.S.2d 235, 236 (App. Div. 2002)); see also N.Y. Crim. Proc. Law § 220.60(3) (granting leave to withdraw plea is a matter within the court's discretion).  "Absent a showing that defendant's plea was baseless, the Judge to whom the motion is addressed must be entitled to rely on the record to ascertain whether any promises, representations, implications and the like were made to the defendant."  People v. Frederick, 45 N.Y.2d 520, 525 (1978).  "Generally, a plea may not be withdrawn unless there is some evidence of innocence, fraud or mistake in its inducement."  People v. Carmona, 887 N.Y.S.2d 370, 372 (App. Div. 2009).  "Furthermore, '[w]here a defendant has been fully informed of the rights he [or she] is waiving by pleading guilty and proceeds to admit to acts constituting the crime, a

---

[28] Petitioner only states that, "[h]ad counsel assisted petitioner, at the very least, there is no reason to believe that the courts would have ruled in contravention to precedent established by the New York Court of Appeals in People v. Bartley, 47 NY2d 956 [*sic*]."  (Pet'r's Affirm. ¶ 79 (typeface altered from original).)  He does not elaborate on this contention or explain the significance of the cited case.  This isolated statement is therefore insufficient in establishing the second prong of Strickland.

subsequent protestation of innocence which is not substantiated by any evidence is generally insufficient to support a request for vacatur of the plea.'" Shovah, 889 N.Y.S.2d at 718 (quoting People v. Paulk, 530 N.Y.S.2d 316, 316 (App. Div. 1988)).

Here, the court made a full and detailed inquiry during Petitioner's plea. (See Ex. 2.) There is simply "'[n]othing in the record of [that] plea allocution [that] called into question the voluntary, knowing and intelligent nature of defendant's bargained-for plea.'" Carmona, 887 N.Y.S.2d at 372 (quoting People v. Seeber, 4 N.Y.3d 780, 780 (2005)). Petitioner confirmed that he discussed the matters with his attorney; understood the rights he waived by pleading guilty; was not threatened or coerced into pleading guilty; was pleading guilty freely and voluntarily; and was pleading guilty because he was in fact guilty. He also admitted that he forcibly stole property from another person, and that he knowingly and unlawfully sold cocaine. (See Apr. 30, 2004 Tr., at 15-26.) In addition, he stated that he understood that he would be released on his own recognizance, and that if he were arrested or otherwise violated a condition of bail, the court would not impose the negotiated sentence. (See id. at 21-22). Petitioner has not shown that there exists a reasonable probability that, given the details of this colloquy, his subsequent bail jumping, his forfeiture of his plea bargain, and the impending imposition of a longer sentence, the court would have granted the motion to withdraw had his attorney assisted in writing it. Accordingly, the state court's denial of this claim cannot be said to have unreasonably applied Strickland. The claim should now be denied.

## IV. CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**. Further, because reasonable jurists

would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Vincent L. Briccetti, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: September 14, 2012
       White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

25

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Vincent L. Briccetti
The Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

Charles Smith, *pro se*
05-A-4356
Mid-State Correctional Facility
9005 Old River Road
P.O. Box 2500
Marcy, New York 13403-0216

John J. Sergi, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601